### Richard Howat et al. v. W. A. Howat et al.

1. MORTGAGES—*Deed Absolute in Form May Be.*—A deed conveying real estate intended only as a security in nature of a mortgage, although an absolute conveyance in form, may in fact be a mortgage.

2. SAME—*Absolute Conveyances in a Grantee With Notice—Mortgages.*—Where an absolute conveyance of land is in reality intended as a security in the nature of a mortgage it retains its character as a mortgage in the hands of each grantee who takes it with notice of the rights of the parties.

**Mortgage Foreclosure.**—Appeal from the Circuit Court of Fulton County; the Hon. JOHN A. GRAY, Judge, presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed April 9, 1902.

On the 20th of December, 1895, L. D. Slocum and wife conveyed 110 acres of land, situated near the city of Canton, in Fulton county, Illinois, to W. A. Howat. There was a mortgage on the land to secure an indebtedness of $7,000 to Levi M. Donnelly. In consideration of the conveyance Howat assumed payment of the Donnelly debt, paid $1,500 or $1,600 of other indebtedness of Slocum and agreed that Slocum and his wife should remain in possession of the dwelling house on the land, together with the garden spot adjacent thereto, during their lives. There is a vein of coal under the land, and in 1899 Howat procured his brother, Richard Howat, to join with him in sinking a shaft and establishing a plant to mine the coal. He conveyed the west half of the land to Richard, subject to the Donnelly mortgage, and the mine was opened and equipped at their joint expense. The mine was operated jointly until April 11, 1900, when Richard leased his half interest in it to his brother for ten years.

On May 26, 1900, a suit to foreclose the mortgage

mentioned having been instituted, W. A. Howat, Richard Howat and L. D. Slocum executed a deed to the land and all the coal mining equipment to Donnelly for the expressed consideration of $8,100, being the amount of the mortgage indebtedness and costs at that date, and on the same day entered into a contract with Donnelly by which, on the payment of that amount and interest at seven per cent, within one year, he was to reconvey to them. At the same time the Howats made an adjustment of their accounts, and it was agreed that W. A. Howat should pay $3,220 of it, that the coal lease between them should continue in force, that of the coal to be mined one-half cent per bushel and the rents from the house and farm to be paid to Donnelly and applied on his debt, and that "at the expiration of the Donnelly contract, in case either party fails to pay the whole or any part of said sums agreed to be paid by them, respectively, then the other party may pay all and take deed for the whole, but shall give the other party contract to convey on or before two years, on his paying his part of the purchase money, with interest on his half of said premises as therein specified." It was further provided in the agreement that on or before the expiration of the Donnelly contract, each of the brothers should use his best efforts to negotiate a loan jointly on the premises and pay off Donnelly. W. A. Howat continued to operate the mine but was unable to pay off the one half cent per bushel royalty to Donnelly, by reason of being put to the expense of certain improvements required by the mine inspector. When the debt fell due, Donnelly demanded payment. W. A. Howat was unable to procure the money but Richard Howat secured the money from appellant E. W. Reagan, paid it to Donnelly and took a conveyance to himself. The arrangement made with Reagan was for a purchase of the property at a sum of $11,000, and Richard Howat conveyed to him. Soon after, Reagan served demand in writing for possession on W. A. Howat and Slocum. Thereupon this suit in equity was commenced by appellees to enjoin Reagan from prosecuting any suit at law to dispossess them and for a decree requiring Richard

Howat to enter into a contract with W. A. Howat, to convey to him his half interest in the property in question, on payment within two years of his proportionate share of the Donnelly debt, and a decretal order, holding that the title of E. W. Reagan is inferior and subordinate to the rights of W. A. Howat in the premises. A temporary injunction was granted, which on a hearing was made permanent, and a decree was rendered finding that the deed from Donnelly to Richard Howat was subject to the terms and conditions of the contract entered into between W. A. Howat and Richard Howat of May 26, 1900; that E. W. Reagan, before receiving the conveyance from Richard Howat, had notice of that contract and of the rights of W. A. Howat under it; that Reagan held his title subject to those rights and that neither he nor Richard Howat had a right to prosecute at law any suit to dispossess W. A. Howat or Slocum of the premises.

O. J. BOYER, attorney for appellants.

CHIPERFIELD & CHIPERFIELD and D. ABBOTT, attorneys for appellees.

MR. JUSTICE HARKER delivered the opinion of the court.

It is clear from the evidence that the conveyance of May 26, 1900, from L. C. Slocum, W. A. Howat and Richard Howat to Levi M. Donnelly was executed to secure the payment of $8,100, the aggregate amount of mortgage debt, interest and costs, originally contracted by Slocum and afterward assumed by the Howats. Although an absolute conveyance in form, it was, in fact, but a mortgage. So familiar is the law upon that point, that the citation of authority is unnecessary. Not only was the deed to Donnelly but a mere mortgagee, but he knew and recognized the terms of the agreement entered into between the Howats which gave either of those parties, in the event of the payment of the debt by the other, the right of a re-conveyance to him of his half of the premises, on payment at any time within two years of his proportionate part of the debt and interest. Richard Howard paid off Donnelly in full and

redeemed the property. When he did so and took a deed from Donnelly, he brought about the very condition contemplated by the above mentioned term of the contract. Had he retained in himself the legal title obtained by Donnelly's deed and refused to give his brother a contract to re-convey, as contemplated by the agreement, there can be no doubt that a court of equity could have compelled him to do so. W. E. Reagan occupies no better position, because he was fully informed of the terms of the agreement and of the rights of W. A. Howat before he parted with his money. He took the conveyance with full notice of the rights of all the parties.

There is no room in the evidence for the contention that W. A. Howat abandoned all rights under the contract and consented for Reagan to purchase the property. As a matter of fact, he was protesting against every step in the negotiations between Reagan and his brother which he thought would cut off his rights. The failure on his part to perform the conditions with reference to payment of royalty, rent, etc., did not constitute an abandonment or work a forfeiture of his right to redeem according to the terms of the contract.

The facts fully justify the decree and the same will be affirmed.